UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ :
BARBARA BOLLENBACH,                                          :
                                                             :
                    Plaintiff,                               :
                                                             :   18cv997
            -against-                                        :
                                                             :   OPINION & ORDER
KIMBERLY HAYNES,                                             :
                                                             :
                    Defendant.                               :
------------------------------------------------------------ :

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Barbara Bollenbach brings this diversity action against Defendant Kimberly Haynes for damages and declaratory relief. Defendant moves to dismiss this action under Rule 12(b)(1) based on various abstention doctrines. For the reasons that follow, Defendant's motion is granted.

## BACKGROUND

        This action represents the latest front in an internecine feud over certain assets following the death of Stephen Bollenbach, a former member of the boards of directors of KB Home, Time Warner, Harrah's and Macy's, and a former executive of Hilton Hotels and the Walt Disney Company. In accord with the nomenclature used by the parties, this Court refers to Barbara Bollenbach as "Barbara," Kimberly Haynes as "Kimberly," and Stephen Bollenbach as "Stephen." The following is drawn from the complaint in this action (the "Complaint") and documents filed in connection with probate proceedings involving the parties pending in the Suffolk County Surrogate's Court (the "Surrogate's Court").

I.     Facts

        Barbara and Stephen were married from 1970 until their divorce in 2010. In

2010, a California state court entered a Judgment for Dissolution of Marriage (the "2010 Judgment"), which entitled Barbara to an interest in certain of Stephen's Time Warner and KB Home assets. (Complaint, ECF No. 1 ("Compl."), ¶¶ 7, 9; see Compl., Ex. A.) In particular, the 2010 Judgment awarded Barbara 50% of Time Warner annual cash retainers in a deferred share account to be paid to Stephen in five annual distributions. (Compl. ¶ 11-12.) Separately, Barbara maintains that the 2010 Judgment awarded her an interest in three categories of KB Home assets. First, the 2010 Judgment awarded Barbara 50% of the proceeds from the exercise of specified KB Home stock options that were under Stephen's management and control. (Compl. ¶¶ 16-19.) Second, the 2010 Judgment entitled Barbara to 50% of an IRA with an account number ending in 9233 (the "9233 Account") and a SEP IRA with an account number ending in 9333 (the "9333 Account") that Stephen held with UBS. (Compl. ¶¶ 28-29, 32-33.) Third, Barbara asserts an entitlement to 100% of KB Home common stock that Stephen received as deferred compensation but failed to disclose in the 2010 Judgment. (Compl. ¶¶ 23-24, 27.)

After Barbara and Stephen's divorce, Kimberly and Stephen were married from 2011 until his death on October 8, 2016. (Compl. ¶ 7.) Barbara alleges that sometime following entry of the 2010 Judgment, Stephen designated Kimberly as the beneficiary of the Time Warner deferred share account, the KB Home stock options, and the KB Home deferred stock in contravention of the 2010 Judgment. (Compl. ¶¶ 13, 20, 25.) Barbara also alleges that she was the named beneficiary of the 9233 and 9333 Accounts as of September 30, 2016. (Compl. ¶¶ 30, 34.) Barbara claims that Kimberly received the Time Warner and KB Home assets following Stephen's death. In particular, Kimberly received or will receive the annual distributions from the Time Warner deferred share account, exercised the KB Home stock options, and received payment of the KB Home deferred stock. (Compl. ¶¶ 14-15, 21-22, 26.) Barbara also avers that

2

following Stephen's death, Kimberly rolled over the proceeds of the 9233 Account and the 9333 Account to IRA accounts for her own benefit. (Compl. ¶¶ 31, 35.)

II. Surrogate's Court Proceeding

Stephen's will was admitted to probate by the Surrogate's Court. (Declaration of Michael A.H. Schoenberg in Support of Motion to Dismiss, ECF No. 22 ("Schoenberg Decl."), Ex. B ("Verified Petition"); Schoenberg Decl., Ex. C ("Verified Answer").) In relevant part, the will directed that the residue of the Estate of Stephen Bollenbach (the "Estate") be poured over into a living trust executed on the same day as the will (the "Trust"). (Schoenberg Decl., Ex. D ("December 2017 Surrogate's Court Decision").) Neither party disputes that Kimberly is the executor of the Estate to whom the Surrogate's Court issued letters testamentary, or that Kimberly is the trustee of the Trust. (Verified Petition ¶¶ 16, 17; Verified Answer ¶¶ 16, 17.)

On March 23, 2017, Barbara served a notice of claim against the Estate on Kimberly—then, the preliminary executor of the Estate—pursuant to the terms of the 2010 Judgment. (Verified Petition, Ex. D.) Barbara's claim purported to be premised on the failure to transfer "various property interests, assets and other rights" to Barbara. (Verified Petition, Ex. D.) On August 9, 2017, Barbara verified a petition in the Surrogate's Court to determine the validity and amount of her claims against the Estate. (See Verified Petition.) As relevant here, the petition asserted claims to certain amounts owed to Barbara by the Estate before any distribution and sought to enjoin the transfer of the assets subject to the claims in the petition. (Verified Petition ¶ 19.) Those assets include the Time Warner deferred retainers, the KB Home stock options, the KB Home deferred compensation shares not disclosed in the 2010 Judgment, and the assets in the 9233 and 9333 Accounts. (Verified Petition ¶¶ 22-24, 33, 39, 49.)

3

DISCUSSION

I.   Legal Standard

A case is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Moreover, a court may "consider materials extrinsic to the complaint" when subject matter jurisdiction is challenged. Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving "the existence of subject matter jurisdiction by a preponderance of the evidence." Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002).

Courts in this circuit have routinely recognized that Rule 12(b)(1) is the proper procedural vehicle for raising abstention issues. See, e.g., Phillips v. Citibank, N.A., 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017); Artists Rights Enf't Corp. v. Estate of Robinson, 2017 WL 933106, at *4 (S.D.N.Y. Mar. 8, 2017). "Abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012); accord Woodford v. Cmty. Action Agency of Greene Cty., Inc., 293 F.3d 517, 522 (2d Cir. 2001) (describing abstention as "compris[ing] a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction").

Kimberly invokes a quartet of exceptions to the general rule that federal courts must exercise valid federal jurisdiction—namely, the prior pending proceeding doctrine,

4

Colorado-River abstention, Younger abstention, and the probate exception. Because this Court concludes that this action should be dismissed under the probate exception, it does not reach Kimberly's alternative grounds for dismissal. Accord Mercer v. Bank of N.Y. Mellon, N.A., 2014 WL 3655657, at *3 n.6 (E.D.N.Y. July 21, 2014), aff'd, 609 F. App'x 677 (2d Cir. 2015) (summary order).

II.    Probate Exception to Federal Jurisdiction

The probate exception to federal diversity jurisdiction "is 'one of the most mysterious and esoteric branches of the law of federal jurisdiction.'" Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc., 918 F.2d 1065, 1071 (2d Cir. 1990) (quoting Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982)). It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). However, "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Marshall, 547 U.S. at 312. In other words, a federal court retains jurisdiction where its exercise "will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings." Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007). Consequently, the exception applies only when a plaintiff seeks (1) to "administer an estate, probate a will, or do any other purely probate matter"; or (2) "to reach a res in the custody of a state court." Lefkowitz, 528 F.3d at 106. Here, the first circumstance is plainly inapplicable. Cf. Moser, 294 F.3d at 340 ("[S]ince few practitioners would be so misdirected as to seek . . . letters testamentary or letters of administration from a federal judge, the first prong of the probate exception is rarely, if ever,

5

violated."). Thus, the dispositive question is whether Barbara's claims ask this Court to exercise control over a res in the custody or control of a state court.

Barbara's claims principally seek damages in the amount corresponding to her share of the assets to which she purports to be entitled under the 2010 Judgment. Specifically, she seeks (1) $253,333.67, which represents 50% of the first annual distribution of the Time Warner cash retainers received by Kimberly (see Compl. ¶¶ 11-14, 37); (2) $460,665.13, which represents 50% of the value of the KB Home stock options that Kimberly exercised after Stephen's death (see Compl. ¶¶ 16-22, 42); (3) $147,061.81, which represents 100% of the KB Home common stock paid to Kimberly (see Compl. ¶¶ 23-27, 44); (4) $64,901.15, which represents 50% of the proceeds of the 9233 Account that Kimberly rolled over into another IRA account after Stephen's death (see Compl. ¶¶ 28-31, 46); and (5) $91,623.26, which represents 50% of the proceeds of the 9333 Account that Kimberly rolled over into another IRA account after Stephen's death (see Compl. ¶¶ 32-35, 48). Finally, the Complaint seeks a declaration that Barbara is the rightful owner of 50% of the four remaining annual distributions of the Time Warner cash retainers. (See Compl. ¶¶ 15, 40.)

To be sure, the Complaint's theory of liability—in contrast to its cataloguing of the assets to which Barbara asserts an interest—is comparatively Delphic, alleging only in substance that Barbara has been damaged in the amounts in which she seeks monetary damages. (Compl. ¶¶ 36-37, 41-48.) But Barbara's opposition papers offer some explication of the nature of her claims. The affirmation submitted by her attorney characterizes this action as one for conversion based on Kimberly's receipt of the Time Warner and KB Home assets. (See Affirmation in Opposition to Defendant's Motion to Dismiss, ECF No. 35 ("Novick Affirm."), ¶ 3.) Barbara's opposition brief premises this action on Stephen's purportedly invalid

designation of Kimberly as beneficiary of the Time Warner and KB Home assets subject to the 2010 Judgment.¹ (See Memorandum of Law in Opposition to Motion to Dismiss, ECF No. 34 ("Opposition"), at 1.)

Whatever their precise nature, Barbara's claims for damages—as alleged in the operative pleading—essentially sound in conversion. Under New York law, "[t]he tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." Republic of Haiti v. Duvalier, 626 N.Y.S.2d 472, 475 (N.Y. App. Div. 1995); accord Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) ("According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" (alteration in original)). Where the property is money, "it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." Republic of Haiti, 626 N.Y.S.2d at 475. Further, as relevant here, "[t]he funds of a specific, named bank account are sufficiently identifiable." Republic of Haiti, 626 N.Y.S.2d at 384. By comparison, the thrust of Barbara's claims for damages is that the 2010 Judgment entitles her to certain possessory rights to specific Time Warner and KB Home assets that Kimberly received.

As an initial matter, a review of the Surrogate's Court's proceeding reveals that the Surrogate's Court has custody or supervisory control over the Time Warner and KB Home assets because they are subject to the claims in the Verified Petition against the Estate.² Accord

---

¹ It is worth noting that while Barbara's opposition brief argues that Stephen's violations of the 2010 Judgment are the subject of this action, counsel apparently recognizes that the claim against the Estate in Surrogate's Court encompasses these violations. (See Novick Affirm. ¶ 4; Opposition, at 3.)

² To be sure, the general rule is that certain assets—such as 401(k) accounts or IRAs—bypass the probate system in the event of a valid, inter vivos beneficiary designation. See, e.g., Mury v. Allen, 2010 WL 5117239, at *2 (N.Y. Sup. Ct. Nov. 22, 2010); In re Raymond, 2001 WL 914266, at *1 (N.Y. Surr. Ct. July 6, 2001). But here,

Architectural Body Research Found. v. Reversible Destiny Found., 335 F. Supp. 3d 621, 635 (S.D.N.Y. 2018) ("Indeed, plaintiff's conversion and replevin claims—by definition—cannot be pursued against the Estate unless it has 'possession' of the disputed property."). And even before the filing of this action, the Surrogate's Court ordered Kimberly to show cause why the Verified Petition's claims against the Estate should not be allowed and why Kimberly should not be preliminarily enjoined—whether individually, as executor of the Estate, or as trustee of the Trust—from transferring the Time Warner deferred retainers, KB Home stock options, the KB Home common stock, the 9233 and 9333 Accounts. (Schoenberg Decl., Ex. F.) This conclusion is further bolstered by the Complaint's allegations that the distribution of the Time Warner and KB Home assets did not take place until after Stephen's death. See Architectural Body Research Found., 335 F. Supp. 3d at 637 (concluding that personal property held by the decedent at the time of death automatically became an asset of the estate "within the custody and control of the Surrogate's Court . . . until and unless a court of competent jurisdiction says otherwise") (citations omitted)).

In determining whether a plaintiff seeks to reach a res under the custody or control of a state court, the Second Circuit contrasts claims seeking "in essence, a disgorgement of funds that remain under the control of the Probate Court," with claims for "damages from Defendants personally rather than assets or distributions from [an] estate." See Lefkowitz, 528 F.3d at 107-08. However, courts must "examine the substance of the relief that [the plaintiff] is seeking, and not the labels they have used." Mercer, 609 F. App'x at 680 (citing Lefkowitz, 528 F.3d at 107); accord Architectural Body Research Found., 335 F. Supp. 3d at 640. Here, while Barbara styles her claims as seeking in personam damages from Kimberly in her individual

---

the validity of Stephen's designation of Kimberly as beneficiary is precisely one of the disputed issues before the Surrogate's Court.

8

capacity, the gravamen of her claims is that Kimberly improperly received assets currently within the supervision of the Surrogate's Court based on Stephen's illegitimate designation of her as beneficiary of the Time Warner and KB Home assets. Irrespective of the language in which she clothes her claims, Barbara ultimately seeks to recover her share of the Time Warner and KB Home assets distributed to Kimberly.[3] Stated differently, her claims fundamentally aim to divert to Barbara some portion of assets already under the supervision of the Surrogate's Court—a proposition that she appears to acknowledge. (See Opposition, at 3 (recognizing that if Barbara recovers the full amount of her claims, "no claim would exist against the estate with respect to those assets")).

In this regard, Barbara's claims differ from those brought by estate administrators or executors to add assets to an estate that were not part of the estate at the time of the decedent's death, which courts have routinely found to be outside the bounds of the probate exception. Architectural Body Research Found., 335 F. Supp. 3d at 639 n.10 (collecting cases); accord Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010); Capponi v. Murphy, 772 F. Supp. 2d 457, 466 (S.D.N.Y. 2009). Rather, the determination that the probate exception divests this Court of jurisdiction to entertain Barbara's claims is consistent with precedent from this circuit finding such "complaints about the maladministration of [the decedent's estate], which have been proceeding in probate courts," to be barred by the probate exception, though they may be "mask[ed] in claims for federal relief." Lefkowitz, 528 F.3d at 107; see, e.g., Mercer, 2014 WL 3655657, at *2 (dismissing claims alleging improper distribution of funds from a trust created by a will and still under the control of the Surrogate's Court that in essence complained about "the alleged mismanagement of assets in the trusts and malfeasance by the fiduciaries").

---

[3] In the proceeding before the Surrogate's Court, Barbara takes the position that these assets were distributed by Kimberly individually and as executor of the Estate. (Verified Petition ¶ 3.)

9

Moreover, another judge in this district applied the probate exception to a factually analogous scenario in dismissing claims brought by a plaintiff, who was the son of the decedent and his former spouse, against the decedent's spouse at the time of his death. Fisch v. Fisch, 2014 WL 5088110, at *1 (S.D.N.Y. Sept. 23, 2014). In relevant part, the plaintiff there asserted that the defendant was named the executor of the decedent's estate and sole beneficiary under his will in contravention of a separation agreement entered into by decedent and his former spouse, which required decedent to leave his estate to his children and maintain life insurance policies naming his children as beneficiaries. Fisch, 2014 WL 5088110, at *1. The court observed that "while styled as a claim seeking actual damages from Defendant," plaintiff's claim—which "essentially seek[s] a declaration . . . that a portion of the estate (or its equivalent amount of money) should go to him instead of to Defendant"—is "really against the estate itself." Fisch, 2014 WL 5088110, at *3. Similarly, Barbara's claims for damages in the amount of her purported share of specific assets within the Surrogate's Court's purview are at their core predicated on Stephen's designation of Kimberly as beneficiary and Kimberly's receipt of those assets after Stephen's death. Finally, Barbara's claim for declaratory relief as to her ownership of the Time Warner assets that have not yet been distributed must also be dismissed under the probate exception. See Lefkowitz, 528 F.3d at 107 (affirming dismissal of claim for declaratory judgment as to plaintiff's ownership of assets under the control of the probate court); Architectural Body Research Found., 335 F. Supp. 3d at 640 (collecting cases in which courts have dismissed declaratory judgment claims asserting ownership over assets within the control of the probate court).

In her opposition to the motion to dismiss, Barbara suggests that the probate exception cannot apply in the context of a testamentary trust, relying on out-of-circuit district

10

court decisions. This contention is unpersuasive. As another judge in this district noted, "although a minority of courts have held that trust matters do not fall within the probate exception, many courts, including the Supreme Court in Marshall, have applied the probate exception analysis to situations involving trusts." See Marcus, 715 F. Supp. 2d at 531 n.4. Likewise, the Second Circuit has invoked the probate exception to affirm the dismissal of claims brought by residual beneficiaries of a testamentary trust. See Mercer, 609 F. App'x at 679 (stating that the general principle underlying the probate exception "applies equally when, as in this case, the res in question is not property of an estate but property of a trust" (citing Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939) and Beach v. Rome Tr. Co., 269 F.2d 367, 371 (2d Cir. 1959))).

Barbara also urges denial of Kimberly's motion to dismiss on the basis that the Surrogate's Court lacks subject matter jurisdiction over the claims in this action such that the probate exception and abstention cannot apply. (See Opposition, at 2; Opposition, at 3 (arguing that a prerequisite for abstention is that the Surrogate's Court may exercise jurisdiction).) But a federal court's constitutional or statutory authority to hear a case does not turn on the availability of an alternative forum with jurisdiction over the claims in question. And in any event, Barbara recognizes that her claims may be brought in the Supreme Court of the State of New York. (See Opposition, at 10.) Barbara's remaining contention is that no basis exists to abstain in favor of the New York Supreme Court because there is diversity of citizenship between the parties. However, it cannot be the case that the mere existence of subject matter jurisdiction is reason enough to extinguish any basis to abstain. Indeed, the probate exception and the abstention doctrines that Kimberly invokes presuppose (almost by definition) that a federal court has subject matter jurisdiction that it must or may then decline to exercise. Because the probate

11

exception requires such a conclusion here, this action is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's claims is granted. All pending applications are denied as moot. The Clerk of Court is directed to terminate the motion pending at ECF No. 21 and mark this case as closed.

Dated: March 8, 2019
     New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.